UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

ANTHONY LEICHTER, PAMELA LEICHTER,
and MNZI LLC,

                                        Plaintiffs,

            - against -                                              **VERIFED COMPLAINT**

THE TOWN OF EAST HAMPTON, THE ZONING BOARD
OF APPEALS FOR THE TOWN OF EAST HAMPTON,
JOHN WHELAN individually, TIM BRENNEMAN
individually, DENISE SAVARESE individually,
ROY DALENE individually, JOAN MORGAN McGIVERN          **Jury Trial Demanded**
individually, THERESA BERGER individually,
THE PLANNING BOARD FOR THE TOWN OF EAST
HAMPTON, SAMUEL KRAMER individually,
SHARON McCOBB individually, IAN CALDER-PIEDMONTE
individually, ED KRUG individually and
NEW CINGULAR WIRELESS PCS, LLC
d/b/a AT&T MOBILITY,

                                        Defendants.
---------------------------------------------------------------------X

        Plaintiffs, by and through their attorneys, CAMPANELLI & ASSOCIATES, P.C.,

complaining of the defendants, respectfully allege as follows:


                        **I.      Nature of This Action**


        1.      Plaintiffs bring this case seeking a declaratory judgment, injunctive relief,

compensatory damages, costs, and attorneys fees, pursuant to 42 U.S.C. §1983 and §1988, for

deprivation of plaintiffs' rights that are secured by the First, Fourth, Fifth, and Fourteenth

Amendments to the United States Constitution, and the New York State Constitution.

2.    As described hereinbelow, the plaintiffs have been constrained to commence this action to protect their homes and to seek redress for the defendants having violated intentionally the plaintiffs' right to petition the government for the redress of grievances.

3.    Defendant NEW CINGULAR WIRELESS PCS, LLC d/b/a AT&T MOBILITY (hereinafter "*AT&T*") was, and remains, a provider of "personal wireless services," within the meaning of the Telecommunications Act of 1996, 42 U.S.C. §322(c)(7)(C)(i).

4.    As described hereinbelow, *AT&T* was seeking to improve its personal wireless services within the Town of East Hampton by installing new wireless antennas somewhere within the Town.

5.    *AT&T* became aware of the fact that there was an existing one hundred twenty (120) foot tower situated upon property within the Town, which is commonly known as the *Iacono Farm,* and *AT&T* determined that instead of constructing an entirely new cell tower within the Town, it could satisfy its wireless coverage needs within the Town by merely installing its desired antennas upon the existing tower at the *Iacono Farm.*

6.    After the owners of the *Iacono Farm* entered into an agreement with *AT&T* to permit *AT&T* to install its antennas on their tower, *AT&T* filed a zoning application to obtain approval to install its antennas there.

7.    After delaying *AT&T's* application for nearly three (3) years, the Town of East Hampton denied *AT&T's* application, despite the fact that the Town lacked any "substantial evidence" to support such denial.

2

8.    Since the Town's denial of *AT&T's* application was not based upon "substantial evidence," such denial violated section 47 U.S.C. §332(c)(7)(B)(iii) of the Telecommunications Act of 1996.

9.    As a result, *AT&T* filed a federal lawsuit against the Town, in the Eastern District of New York, seeking to annul the Town's denial of its application and to proceed thereafter to install its desired antennas on the *Iacono Farm* Tower.

10.    To avoid losing that lawsuit, the defendant Town sought to induce *AT&T* to settle the federal case. The Town proposed that if *AT&T* abstained from installing its antennas on the existing *Iacono Farm* tower, *AT&T* could, *instead*, build an entirely new and massive one hundred eighty-five (185) foot tower on property owned by the Town. Such property is hereinafter referred to as the "Bull Path" location, which is located directly adjacent to the plaintiffs' homes.

11.    To build such an entirely new massive tower, however, would require *AT&T* to obtain several zoning approvals, each of which would necessitate a public hearing, at which persons whose homes were adversely affected by the massive new tower would be afforded an opportunity to oppose such zoning approvals.

12.    Induced <u>entirely</u> by the Town to do so, *AT&T* filed the necessary zoning applications seeking approvals to build an entirely new tower, at a location *where AT&T does not want to place it*, and at a height *significantly higher than AT&T wants, or needs*.

13.    The Town defendants thereafter proceeded to conduct sham public hearings at which:

(a)     The Town defendants deliberately prevented the plaintiffs from proffering statutorily-required evidence, which could have served as a basis for denying the zoning applications at issue, within the purview of 42 U.S.C. §332(c)(7)(B)(iii),

(b)     Zoning Board and Planning Board Members considered, and rendered their determinations based upon "outside evidence" that was never offered at any public hearings, and never made part of any record of public hearings, and concomitantly, the plaintiffs had no opportunity to review, much less refute such evidence, and

(c)     Zoning Board and Planning Board members then proceeded to grant the applications having already determined that they were going to grant such applications long before such hearings ever commenced.

14.     During such public hearings, representatives of *AT&T* indicated <u>on the record</u>, that *AT&T still* wants to install its antennas on the existing tower at the *Iacono Farm*, but that it is the Town that wants *AT&T* to build the proposed entirely new and much larger tower at the far more intrusive site.

15.     The entirely new tower that has been proposed by the Town (*and not AT&T*) would loom over the plaintiffs' homes at an elevation as high as two hundred twenty-five (225) feet tall, on property situated directly adjacent to the plaintiffs' homes. The tower would reduce the value of the plaintiffs' homes by as much as seven hundred fifty-thousand ($750,000.00) dollars per home.

16.     Under the circumstances, the plaintiffs have been constrained to commence this action, to seek redress for the violation of their rights, and to protect their homes against the severe damage to their property values, and the dramatic adverse aesthetic impacts that the two hundred twenty-five foot tall tower would inflict upon them.

4

17.     The plaintiffs seek redress under 42 U.S.C. §1983, and 42 U.S.C. §1988 et al.

## II.     Jurisdiction and Venue

18.     Jurisdiction of the court is invoked pursuant to 28 U.S.C. §1331 in that this is a civil action arising under the Constitution and laws of the United States.

19.     Jurisdiction of the court is also invoked pursuant to 28 U.S.C. §1343(a)(3) and §1343(a)(4) to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or all persons within the jurisdiction of the United States, and to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

20.     Supplemental jurisdiction is invoked pursuant to 28 U.S.C. §1367 for plaintiffs' related state law claim, which forms part of the same case and controversy, and derives from a common nucleus of operative facts.

21.     Plaintiffs seek declaratory relief and compensatory damages pursuant to 28 U.S.C. §§ 2201(a) and 2202.

22.     Plaintiffs seek permanent injunctive relief pursuant to Fed. R. Civ. P. 65.

23.     Plaintiffs seek reasonable attorney's fees as part of the costs authorized to the prevailing party in an action pursuant to 42 U.S.C. §1983, predicated upon 42 U.S.C. §1988, and 42 U.S.C. §2000.

24.     Venue lies in the Court pursuant to 28 U.S.C. §1391(b)(ii) in that Suffolk County is the underlying County for purposes of venue and where the vast majority of the events occurred.

5

### III.     The Parties

25.     Plaintiff Anthony Leichter is an individual residing at 201 Bull Path, East Hampton, within the County of Suffolk, State of New York.

26.     Plaintiff Pamela Leichter is an individual residing at 201 Bull Path, East Hampton, within the County of Suffolk, State of New York.

27.     Plaintiffs Anthony Leichter and Pamela Leichter are husband and wife, and the owners of the real property situated at 201 Bull Path, East Hampton. Their property is located directly adjacent to the real property upon which the defendant Town seeks to induce defendant *AT&T* to construct the wholly unnecessary tower described herein (that location hereinafter referred to as "the Bull Path site").

28.     Plaintiff MNZI LLC is a domestic Limited Liability Company duly organized under the laws of the State of New York, with a principal place of business situated at 3 Sylvie Lane, East Hampton, in the County of Suffolk, State of New York.

29.     Plaintiff MZNI LLC is the owner of real property, which is located directly adjacent to the Bull Path site.

30.     Upon information and belief, defendant THE TOWN OF EAST HAMPTON is a municipal corporation organized and operating under New York State law, with a principal place of business situated at 159 Pantigo Road, East Hampton, NY 11937.

<u>The Zoning Board Defendants</u>

31.     Upon information and belief, defendant THE ZONING BOARD OF APPEALS FOR THE TOWN OF EAST HAMPTON is a duly constituted board of the Town of East Hampton, which is a municipal corporation existing under the laws of the State of New York, with its principal place of business located at 300 Pantigo Road, East Hampton, New York 11937.

32.     Upon information and belief, at all relevant times described herein, defendant JOHN WHELAN was, and is an individual, and is a Chairperson for the Zoning Board of Appeals for the Town of East Hampton.

33.     Upon information and belief, defendant JOHN WHELAN'S actual place of business and/or employ is at the Zoning Board of Appeals, located at 300 Pantigo Place, Suite 105, East Hampton, NY 11937.

34.     Upon information and belief, at all relevant times described herein, defendant TIM BRENNEMAN was, and is an individual, and is a Board Member of the Zoning Board of Appeals for the Town of East Hampton.

35.     Upon information and belief, defendant TIM BRENNEMAN'S actual place of business and/or employ is at the Zoning Board of Appeals, located at 300 Pantigo Place, Suite 105, East Hampton, NY 11937.

36.     Upon information and belief, at all relevant times described herein, defendant DENISE SAVARESE was, and is an individual, and is a Legislative Secretary for the Zoning Board of Appeals for the Town of East Hampton.

7

37.     Upon information and belief, defendant DENISE SAVARESE'S actual place of business and/or employ is at the Zoning Board of Appeals, located at 300 Pantigo Place, Suite 105, East Hampton, NY 11937.

38.     Upon information and belief, at all relevant times described herein defendant ROY DALENE was, and is an individual, and is the Vice-Chairperson for the Zoning Board of Appeals for the Town of East Hampton.

39.     Upon information and belief, defendant ROY DALENE'S actual place of business and/or employ is at the Zoning Board of Appeals, located at 300 Pantigo Place, Suite 105, East Hampton, NY 11937.

40.     Upon information and belief, at all relevant times described herein defendant JOAN MORGAN McGIVERN was, and is an individual, and is a Board Member of the Zoning Board of Appeals for the Town of East Hampton.

41.     Upon information and belief, defendant JOAN MORGAN McGIVERN'S actual place of business and/or employ is at the Zoning Board of Appeals, located at 300 Pantigo Place, Suite 105, East Hampton, NY 11937.

42.     Upon information and belief, at all relevant times described herein defendant THERESA BERGER was, and is an individual, and is a Board Member of the Zoning Board of Appeals for the Town of East Hampton.

43.     Upon information and belief, defendant THERESA BERGER'S actual place of business and/or employ is at the Zoning Board of Appeals, located at 300 Pantigo Place, Suite 105, East Hampton, NY 11937.

44.    Defendants JOHN WHELAN, TIM BRENNEMAN DENISE SAVARESE, ROY DALENE, JOAN MORGAN McGIVERN, and THERESA BERGER are hereinafter collectively referred to herein as "the Zoning Board Defendants."

<u>The Planning Board Defendants</u>

45.    Upon information and belief, the defendant THE PLANNING BOARD FOR THE TOWN OF EAST HAMPTON is a duly constituted board of the Town of East Hampton, which is a municipal corporation existing under the laws of the State of New York, with its principal place of business located at 300 Pantigo Road, East Hampton, New York 11937.

46.    Upon information and belief, at all relevant times described herein, defendant SAMUEL KRAMER was, and is an individual, and is the Chairperson for the Planning Board for the Town of East Hampton.

47.    Upon information and belief, defendant SAMUEL KRAMER'S actual place of business and/or employ is at the Planning Board for the Town of East Hampton, located at 300 Pantigo Place, Suite 103, East Hampton, NY 11937.

48.    Upon information and belief, at all relevant times described herein, defendant SHARON MCCOBB was, and is an individual, and is a board member for the Planning Board for the Town of East Hampton.

49.    Upon information and belief, defendant SHARON MCCOBB's actual place of business and/or employ is at the Planning Board for the Town of East Hampton, located at 300 Pantigo Place, Suite 103, East Hampton, NY 11937.

50.     Upon information and belief, at all relevant times described herein, defendant IAN CALDER-PIEDMONTE was, and is an individual, and is a board member for the Planning Board for the Town of East Hampton.

51.     Upon information and belief, defendant IAN CALDER-PIEDMONTE's actual place of business and/or employ is at the Planning Board for the Town of East Hampton, located at 300 Pantigo Place, Suite 103, East Hampton, NY 11937.

52.     Upon information and belief, at all relevant times described herein, defendant ED KRUG was, and is an individual, and is a board member for the Planning Board for the Town of East Hampton.

53.     Upon information and belief, defendant, ED KRUG'S actual place of business and/or employ is at the Planning Board for the Town of East Hampton, located at 300 Pantigo Place, Suite 103, East Hampton, NY 11937.

54.     Defendants SAMUEL KRAMER, SHARON MCCOBB, IAN CALDER-PIEDMONTE, and ED KRUG are hereinafter collectively referred to herein as "the Planning Board Defendants."

55.     Upon information and belief, respondent NEW CINGULAR WIRELESS PCS, LLC d/b/a AT&T MOBILITY (hereinafter referred to as "*AT&T*"), is a domestic limited liability company, organized under the laws of the State of Delaware, with a principal place of business currently located at 1025 Lenox Park Blvd. NE, Brookhaven, GA 30319 and its New York State DOS address at 28 Liberty Street, New York, New York 10005.

56.     Defendant *AT&T* has been joined herein as a necessary party, because the plaintiffs seek, among other things, a declaratory judgment annulling the approvals that the Town defendants have granted to *AT&T* to construct the tower described herein at the real property known as the Bull Path Site, and to obtain injunctive relief, enjoining both AT&T and the Town from constructing such a tower at such location.

## IV.    **Preliminary History**

57.     Upon information and belief, defendant *AT&T* is a provider of personal wireless services within the meaning of 42 U.S.C. §322(c)(7)(C)(i).

58.     Sometime before January 2015, *AT&T* became desirous of installing new wireless transmission antennas within the Town of East Hampton, to improve its wireless services within the Town.

59.     Rather than constructing an entirely new cell tower upon which to install such new antennas, *AT&T* located *an existing* tower upon which it could simply install its antennas. *AT&T* determined that this would satisfy its coverage needs, while contemporaneously avoiding the expense of building an entirely new cell tower.

60.     The existing tower upon which *AT&T* sought to install its desired new antennas was situated upon property commonly known as the *Iacono Farm*.

## A.    *AT&T and The Iacono Farm Tower*

61.    On or about September 1, 2011, the owners of real property commonly known as the *Iacono Farm,* which is situated at 100-06 Long Lane, in East Hampton, constructed a one hundred twenty (120) foot steel lattice tower upon their property, after having obtained all necessary zoning approvals from the Town.

62.    Thereafter, *AT&T,* which was desirous of installing wireless transmission antennas within the Town, approached the owners of the *Iacono Farm* seeking permission to install its new cell antennas on the already-built 120-foot tower.

63.    Upon being approached by *AT&T,* the owners of the *Iancono Farm* agreed to permit *AT&T* to install its antennas on their existing tower.

64.    As *AT&T* has made clear "on the record" in multiple zoning proceedings in the Town of East Hampton, *AT&T* had determined that its need to enhance its wireless service within the Town could be met by merely installing antennas on the pre-existing tower on the *Iacono Farm*.

65.    By installing antennas on a pre-existing tower, as opposed to constructing an entirely new tower, *AT&T* would not only dramatically reduce the expenses it would incur, but would also reduce, *if not eliminate in their entirety*, any adverse impacts to the Town, in terms of adverse aesthetic impacts, or potentially excessive adverse impacts upon the value of any nearby residential properties that would be situated in close proximity to any new cell tower.

66.     As reflected within a two hundred and seventy-eight (278) page environmental impact report, submitted by *AT&T* to the Town in support of its *Iacono Farm* application, simply installing its antennas on the already-built tower at the *Iacono Farm*, would have absolutely no environmental impact upon any properties within the Town. A true copy of the environmental impact report is annexed to this complaint and made a part hereof as Exhibit "A" – filed electronically in multiple sub-parts.

67.     Upon entering into an agreement with the owners of the *Iacono Farm*, *AT&T* filed an application with the Town on January 26, 2015, seeking one or more zoning approvals to install its desired antennas on the *Iacono Farm* tower.

68.     Upon information and belief, the Town and its representatives held public hearings upon such applications on March 23, 2016, and August 9, 2017, to afford anyone opposing the application to submit *substantial evidence* to oppose the granting of *AT&T's* applications.

69.     On December 13, 2017, after delaying the application for nearly three (3) years, the Planning Board for the Town of East Hampton finally denied *AT&T's* application to install its antennas on the pre-existing tower at the *Iacono Farm*.

70.     Upon the Planning Board's denial, *AT&T* filed a federal lawsuit against the Town of East Hampton, claiming that the Town had violated the Telecommunications Act of 1996.

71.     Within that lawsuit, which was filed in the Eastern District of New York under Case # 2:18-cv-00242, *AT&T* correctly asserted that in denying *AT&T's* application, the Town had violated the Telecommunications Act of 1996 (the TCA), because the Town's denial of *AT&T's* application was not based upon "substantial evidence," within the meaning of 42 U.S.C. §332(c)(7)(B)(iii) of the Telecommunications Act of 1996 (TCA).

72.     Section 47 U.S.C. §332(c)(7)(B)(iii) of the TCA prohibits the denial of zoning applications seeking approvals for the installation of wireless facilities, where such denials are not based upon "substantial evidence" supporting any such denials, including substantial evidence to rebut any favorable evidence which had been proffered by a respective applicant.

73.     As was laid bare in *AT&T's* federal complaint against the Town, *AT&T* had submitted a wealth of evidence to establish that its installation of antennas on the existing *Iacono Farm* tower would both: (a) comply with the Town Code, and (b) "*would have, at most, a de minimus*" visual impact on neighboring properties. All of such evidence was <u>unrebutted</u> by the Town or anyone who might have opposed the granting of *AT&T's* application.

74.     Alternatively stated, neither the Town nor anyone who was opposed to *AT&T's* application had introduced, much less identified, "substantial evidence" based upon which the Town could have legally denied *AT&T's* application to install its antennas upon the existing tower at the *Iacono Farm*. Accordingly, the Town was prohibited from denying that application under section 47 U.S.C. §332(c)(7)(B)(iii) of the TCA.

**B.    The Town Undertakes Efforts to Persuade *AT&T* to Build *an Entirely New Tower* Upon Town Property, and at a <u>Substantially Greater Height That What *AT&T* Needs or Wants</u>**

75.     Lacking any viable defense to *AT&T's* lawsuit, the Town sought to induce *AT&T* to abandon its desire to simply install its antennas upon the existing one hundred twenty (120) foot tower at the *Iacono Farm*, *and instead*, to build an *entirely new* massive one hundred eighty-five (185) foot tower upon real property owned by the Town, which is situated at 250 Bull Path, and 12 and 18 Old Northwest Road in East Hampton, New York (the "Bull Path site").

76.     Moreover, in addition to seeking to induce *AT&T* to build an entirely new tower at a location where *AT&T* would prefer not to build it, the Town contemporaneously sought to force *AT&T* to build the new tower at a height significantly taller than what *AT&T* wants, or needs, to provide wireless services within the Town.

77.     As *AT&T's* attorneys have stated on the record at one or more public hearings before the Town, even if *AT&T* were to build a new tower at the location preferred by the Town, *AT&T* would only need the height of the new tower to be 160 feet. It is *the Town* that wants *AT&T* to build the tower at the height of 185 feet, so, at some unknown point in the future, the Town would be permitted to add not-yet-identified antennas and/or equipment to the top of the tower, to be used for Town purposes.

78.     Unlike at the *Iacono Farm*, the construction of such a massive tower directly adjacent to the plaintiffs' residential homes would dramatically reduce the value of the plaintiffs' adjacent homes by as much as $750,000.00 per house, and it would have a dramatic adverse aesthetic impact upon such residential properties.

79.     Not only would the new tower, itself, be one hundred eighty-five (185) feet in height, but the base of the tower would be placed at an elevation that is roughly fifty (50) feet higher than the elevation of the adjacent homes.

80.     This elevation means that the new tower, as desired by *the Town*, would stand at least two hundred thirty-five (235) feet in actual height above the adjacent homes of the plaintiffs herein. That is equivalent to a twenty-three (23) story building, which would loom directly over the plaintiffs' adjacent two (2) story homes.

81.     On February 4, 2020, the Zoning Board of Appeals and the individual defendants herein who serve on that board, voted to approve *AT&T'* application for three (3) variances of 23', 26' and 40' from Section 255-5-50 of the Town Code, to authorize *AT&T* to construct a new one hundred eighty-five (185) foot monopole at the Bull Path location, after knowingly and deliberately having prevented the plaintiffs from introducing "substantial evidence" based upon which the application for such variances could have, and should have, been denied.

**C.      The Substantial Evidence Requirement of The Telecommunications Act of 1996 (the "TCA") as Applied in The Eastern District of New York**

82.     As was well-known to the Town defendants (by virtue of the lawsuit which *AT&T* had filed against the Town due to the denial of the *Iacono Farm* application), Section 47 U.S.C. §332(c)(7)(B)(iii) of the TCA prohibits local zoning boards from denying zoning applications seeking approvals to install wireless facilities unless the respective board has before it "substantial evidence" sufficient to support a legally permissible grounds for denial.

83.    As interpreted by federal courts in the Eastern District of New York, Section 47 U.S.C. §332(c)(7)(B)(iii) mandates that to the extent that anyone seeks to oppose the granting of an application for the installation of a cell tower, those opposing such application must proffer substantial evidence to both (a) establish proper, lawful grounds upon which such application may properly be denied, and (b) to rebut any evidence, including expert evidence, which has submitted by the respective applicant. *See* New York SMSA Ltd. P' ship v. Vill. of Floral Park Bd. of Trustees, 812 F. Supp. 2d 143, 153 (E.D.N.Y. 2011).

84.    Where, as here, adjacent property owners would be adversely affected by the construction of a proposed cell tower adjacent to their home, they may secure the denial of a zoning application seeking approval for same based upon adverse impacts such as aesthetic impacts and a reduction in their property values. *See, e.g.,* Omnipoint Communications Inc. v. The City of White Plains, 430 F3d. 529 (2nd Cir. 2005).

85.    But as has been made crystal clear by the Courts in the Eastern District of New York, homeowners such as the plaintiffs herein, cannot defeat cell tower applications by merely voicing "generalized concerns" regarding adverse aesthetic impacts, or "conclusory assertions that their property values would decrease. *See* New York SMSA Limited Partnership d/b/a Verizon Wireless v. Village of Floral Park Board of Trustees, 812 F.Supp.2d 143 (2011). . . " and "conclusory assertions that property values would decrease" do not amount to "substantial evidence," which can legally support a denial of a zoning application for a cell tower.

86.    In New York SMSA, in determining whether the Village's denial of a special use permit was based upon "substantial evidence" as is required under the TCA, the Honorable Arthur J. Spatt detailed the specific evidence that had been submitted into the record before the Village Board in support of Verizon's permit application.

87.    As opined by Judge Spatt:

> "At the hearing, *Verizon* submitted the expert testimony and technical reports from: (1) a civil engineer demonstrating that the Facility would be structurally sound and in compliance with all applicable building codes; (2) an acoustical engineer who performed an acoustical study that showed that the Facility would not generate any noise that would exceed the requirements of the Code; (3) an expert from an engineering, surveying, and landscape architecture firm who prepared eight photo simulations and report concluding that the Facility "[w]ould not result in substantial changes to the physical characteristics of the area or significant adverse impacts to neighborhood character or environmental conditions" and that the Facility would have a de minimis aesthetic impact on the surrounding community because there would be no significant impact to the character or aesthetics of the surrounding neighborhood or to the environmental conditions of the Property (R. 244-304); (4) a real estate appraiser who testified and prepared a report concluding that the Facility would not have a negative impact on the property values in the surrounding areas; and (5) an RF emissions expert who testified and prepared a report concluding that the RF emissions from the *157 Facility will be well below the FCC regulations for RF emissions."

88.    After reviewing the specific above-referenced evidence that was placed into the record by *Verizon*, Judge Spatt reviewed the record to see what evidence was offered in rebuttal, and to determine if such rebuttal evidence amounted to "substantial evidence" within the meaning of the TCA so that *Verizon's* application could be lawfully denied based upon same.

89.     In rendering a determination in favor of *Verizon*, Judge Spatt ruled that "a few generalized expressions of concern about aesthetics by residents . . ." and "conclusory assertions [by residents] that property values would decrease" do not amount to substantial evidence under the TCA, and concomitantly, may not lawfully serve as a basis for denial of a zoning application seeking approval for the installation of a cell tower.

90.     Thus, in applying the TCA, Courts in the Eastern District of New York impose a burden upon property owners seeking to oppose an application for a cell tower that would adversely impact their homes. The property owners must proffer both "substantial evidence" of the adverse impacts that their homes would sustain, and "substantial evidence" to rebut any expert evidence that has been submitted by the applicant. In the absence of such, the relevant provision of the TCA mandates that the relevant application be granted by the respective board.

**D.      The Zoning Board Defendants Knowingly and Intentionally Deprive the Plaintiffs of any Meaningful Opportunity to Present Substantial Evidence to Defeat the Zoning Applications for the Tower desired by the Town**

91.     With the Town having been sued for failing to comply with same, each of the Zoning Board defendants were acutely aware of the "substantial evidence" requirements of the TCA.

92.     While the Said defendants also knew full well that they were required to conduct public hearings for each of the necessary zoning applications needed for approval of the tower which the Town was trying to force *AT&T* to build, the Town defendants deliberately proceeded to conduct "sham" hearings," the outcomes of which they had already predetermined.

93.    The Town defendants knowingly, and deliberately conducted such hearings in a manner to ensure that the adjacent homeowners would be deprived of any meaningful opportunity to submit "substantial evidence" that could satisfy the legal requirements, and which could have served as the basis for denial of any such applications.

94.    At such sham public hearings, the Town defendants:

(a)    knowingly and deliberately deprived the plaintiffs of a meaningful opportunity to present statutorily-required substantial evidence to oppose the applications pertaining to the tower, which the Town is trying to force *AT&T* to build;

(b)    knowingly and deliberately departed from their ordinary practices of affording at least one adjournment upon request of any party, for those hearings that were on the Town board's calendar for the first time;

(c)    refused not only to adjourn or continue the hearing, at the request of the plaintiffs to enable the plaintiffs to submit evidence to oppose the pending applications but also refused to allow the record to remain open for a finite period of time to enable the plaintiffs to submit same;

(d)    afforded counsel for the applicant, and the applicant's representatives "unlimited" time to make presentations before each of the respective boards, while only affording counsel for the homeowners "3 minutes;"

(e)    afforded the applicant *(AT&T)* unlimited time to submit whatever evidence is sought to submit in support of such applications while affording the plaintiffs only five (5) days, which would not have provided the plaintiffs, (1) time to obtain the applicant's expert reports from the Town's records, (2) time to contact local experts who could then prepare reports to refute the applicant's expert reports, (3) time for those experts to

then conduct an analysis and prepare their own reports, and (4) time for the plaintiffs to get those reports to the Town before or at the public hearing.

95.     This is especially true, given the nature and extent of the reports which are typically provided by an applicant seeking to construct a cell tower, as were identified by Judge Spatt in New York SMSA *See* paragraph 69 hereinabove, and the type of environmental impact reports which are typically provided in cases such as this, such as the one prepared by *AT&T* for the *Iacono Farm* site *See* Exhibit "A" annexed hereto.

The Town of East Hampton's Custom
and Practice For Public Hearings

96.     Upon information and belief, it is the ordinary custom and practice of both the Zoning and Planning Boards of the Town of Easthampton, and the Zoning Board defendants and Planning Board defendants, that they will invariably grant at least one adjournment or continuation of any public hearing upon any zoning or planning application that comes before them, and/or they will keep the record open for written submissions, if any person or party requests such an adjournment of a public hearing, which is on for the first time.

97.     The Town defendants did precisely that in the case of *AT&T's* application seeking approval to install its antennas at the *Iacono Farm*, where the Town kept both the public hearing, and the record, open from March 23, 2016, through August 9, 2017, to enable anyone who wanted to submit evidence into the record to do so.

98.    Upon information and belief, when entertaining applications seeking approvals for cell towers, both the Zoning Board defendants and Planning Board defendants give the applicants anywhere from a period of months to several years, to prepare and submit any records and expert reports the applicant may wish to submit in support of its zoning application.

> The Zoning Board Defendants Deliberately Prevented the Plaintiffs From Presenting Substantial Evidence into the Record, and Deprived the Plaintiffs of any Meaningful Opportunity to Oppose The Bull Path Application

99.    As described herein, the Zoning Board defendants knowingly and intentionally deprived the plaintiffs of any meaningful opportunity of opposing the Bull Path application, and knowingly and intentionally prevented the plaintiffs from satisfying the requirements of the TCA (by obtaining and presenting substantial evidence in opposition to the Bull Path application).

100.    Upon information and belief, having predetermined that they were going to grant *AT&T's* application to construct an entirely new cell tower at a location, and at a height, both of which had not only been chosen by the Town but had been, for all practical purposes, *imposed upon AT&T* by the Town, the Zoning Board defendants knowingly and intentionally prevented the plaintiffs from obtaining and submitting into the record at the hearing: (a) substantial evidence of the adverse impacts the proposed tower would inflict upon their homes, and (b) substantial evidence to rebut evidence that had been proffered by *AT&T*.

101.    First, the defendants caused a notice to be sent to the Leichter plaintiffs, not to their home in East Hampton, but to an address they have in New York City, so that they only received notice of the public hearing upon *AT&T's* Bull Path application five (5) days before the public hearing.

22

102.    Second, at the public hearing, *AT&T's* representatives were afforded an <u>unlimited</u> period of time to present all of their evidence, documents, drawings, and expert opinions.

103.    By contrast, the Zoning Board defendants only afforded the plaintiffs three (3) minutes to both (a) provide substantial evidence of the adverse impacts which the two hundred twenty-five (225) foot tower would inflict upon their homes, and (b) provide substantial evidence to refute the evidence which had been proffered by *AT&T,* despite the fact that the plaintiffs only learned of the proposed tower, and the public hearing for same, five (5) days before the public hearing.

104.    After the plaintiffs, by their counsel, employed their best efforts to (a) address the full presentation that had been made by *AT&T's* representatives, and (b) to proffer whatever arguments they could, plaintiffs' counsel asked that, *at a minimum*, the Town keep the record open for a limited period to enable the plaintiffs to file written submissions and evidence sufficient to satisfy the requirements of the TCA to support a denial of *AT&T's* application.

105.    Despite the fact that: (a) the hearing was on for the first time, and (b) the Town's regular custom and practice is to grant at least one adjournment at the request of any interested party or person, the Zoning Board defendants refused to adjourn the hearing and refused to keep the record open, and instead, immediately closed both.

106.    By intentionally depriving the plaintiffs of a meaningful opportunity to present substantial evidence, the Zoning Board defendants provided plaintiffs with a hollow proceeding, by merely "going through the motions." With having already predetermined the outcome of the proceeding, the Zoning Board defendants made it impossible for anyone to submit "substantial evidence" that would enable the application to be legally be denied.

107.    While the applicant *(AT&T)* was afforded unlimited time to prepare various expert reports and an environmental impact statement if it chose to, the plaintiffs were only afforded five days' notice before the public hearing to gather and submit substantial evidence to support their opposition.

108.    Any reasonable member of the Zoning Board of Appeals would know that five days is an impossible amount of time to gather and present substantial evidence to both (a) support a denial of the application based upon adverse impacts upon property values and aesthetics, and (b) to provide substantial evidence to rebut the evidence that had been proffered by the applicant, and this is especially true of evidence that was not submitted by the applicant, or made available by the Town, until at the public hearing itself.

109.    By way of example, at the public hearing, the applicant submitted "site drawings," which the applicant displayed, which purportedly showed the "site lines" of visibility for the tower, to claim that the plaintiffs wouldn't be able to see the proposed two hundred twenty-five (225) foot tower situated directly adjacent to their two-story homes.

110.    As was immediately apparent to the plaintiffs, the drawings, presented by the Applicant, were inherently fraudulent because the drawings depicted the base of the proposed tower situated at the same elevation as the base of the plaintiffs' homes.

111.    As was known to the plaintiffs, (a) the location where the base of the tower would be constructed is actually at an elevation that is roughly fifty (50) feet higher than the base elevation of the plaintiffs' homes and (b) the Town of East Hampton had topographical maps which would show this precise fact.

112.    The plaintiffs' attorney requested that the Zoning Board defendants either leave the hearing open, or, at a minimum, leave the record open, to afford the plaintiffs time to get those records from the Town and to put them into evidence in the ZBA hearing.

113.    But the Zoning Board defendants refused to afford the plaintiffs' time to submit that evidence, or to leave the hearing or the record open, to afford them time to obtain and submit same.

114.    Simply stated, receiving 1st notice of the *AT&T* ZBA hearing just five (5) days before the hearing, rendered it factually impossible for the plaintiffs:

    (a)    to obtain the entire zoning file from the Town to review the applicant's submissions and expert reports,

    (b)    to then try to locate, identify and retain experts who could then prepare expert reports to refute the applicant's reports,

    (c)    to afford the plaintiffs' experts time to analyze the site to enable them to prepare their own expert reports;

    (d)    to have them prepare rebuttal reports, and submit them to the Town, all within a mere five (5) days, and

    (e)    to respond to evidence submitted by the applicant on the night of the hearing, which gave the plaintiffs no time to refute.

115.    This is especially true considering that the expert reports that are customarily submitted by applicants, include those described by Judge Spatt in <u>New York SMSA</u>, *Supra* which typically incorporate the following

> "At the hearing, *Verizon* submitted the expert testimony and technical reports from: (1) a civil engineer demonstrating that the Facility would be structurally sound and in compliance with all applicable building codes; (2) an acoustical engineer who performed an acoustical study that showed that the Facility would not generate any noise that would exceed the requirements of the Code; (3) an expert from an engineering, surveying, and landscape architecture firm who prepared eight photo simulations and report concluding that the Facility "[w]ould not result in substantial changes to the physical characteristics of the area or significant adverse impacts to neighborhood character or environmental conditions" and that the Facility would have a de minimis aesthetic impact on the surrounding community because there would be no significant impact to the character or aesthetics of the surrounding neighborhood or to the environmental conditions of the Property (R. 244-304); (4) a real estate appraiser who testified and prepared a report concluding that the Facility would not have a negative impact on the property values in the surrounding areas; and (5) an RF emissions expert who testified and prepared a report concluding that the RF emissions from the *157 Facility will be well below the FCC regulations for RF emissions."

116.    In knowingly making it physically and factually impossible to proffer evidence, the submission of which would have been statutorily required to serve as a basis for denying *AT&T's* application for a tower at the Bull Path site, the Zoning Board defendants acted deliberately and intentionally to deprive the plaintiffs of any meaningful opportunity to oppose the *AT&T* application, because the Town defendants had already decided that they were going to grant such applications long before any public hearings about the same were ever conducted.

117.    In doing so, the Zoning Board defendants departed from the Town's ordinary customs and practices of affording potentially adversely affected parties adjournments, to give them time to submit whatever relevant evidence they might choose to submit.

118.    The Zoning Board defendants not only refused to adjourn the matter to allow plaintiffs more time to gather "substantial evidence" within the meaning of the TCA, but they also refused to keep the record open. This refusal ensured that the plaintiffs would be deprived of any opportunity to produce such evidence, further denying the plaintiffs of a meaningful opportunity to oppose the application at issue.

**E.    The Zoning Board Defendants Unlawfully Render Approvals Based Upon Evidence Which Was Not Entered Into the Record, <u>Thereby Preventing the Plaintiffs From Rebutting Same</u>**

119.    In addition to depriving the plaintiffs of a meaningful opportunity to present evidence to oppose the variance application for the Bull Path site, the Zoning Board defendants additionally based their approval upon evidence that was not made public, never made part of the record of the hearing, and was never disclosed to the plaintiffs, thereby depriving the plaintiffs of any opportunity, whatsoever, to rebut such evidence.

120.    As has been disclosed by the defendants in an Article 78 proceeding, which was filed in the New York State Supreme Court in Suffolk County, the Zoning Board defendants conceded that their decision to grant the variances described herein were based upon the following:

> A.      By inducing *AT&T* to build a new tower at the Bull Path site, and at a height higher than what *AT&T* desires, "gives the Town an opportunity to locate [unspecified] additional emergency services equipment and improve [unspecified] communications in the Northwest woods area;" and

B.     To achieve the Town's [unspecified] goals, "it was determined" that the cell tower at the Bull Path site "must be 185 feet high;" and

C.     "The Town would not be able to achieve these goals at the Iacono Farm site" as the existing tower "was not tall enough, and did not have sufficient space, to locate Town equipment."

Paragraphs 80-82 of a Verified Answer, interposed by the defendant Zoning Board of Appeals in an Article 78 proceeding pending in the Supreme Court, Suffolk County, under index number 20-01188.

121.     Within the context of the ZBA hearing upon the application for setback and height variances for the Bull Path site, no evidence whatsoever was disclosed nor placed into the record regarding or concerning:

(a)     what specific coverage goals the defendant Town was seeking to achieve, or that the Town suffered from some gap in wireless coverage which might necessitate the construction of a 200 plus foot tower, much less a 200-foot tower at the Bull Path location;

(b)     how, if at all, it had been determined that the tower at the Iacono Farm site "would not be able to achieve" whatever unspecified "goals" that the Town was seeking to "achieve,"

(c)     how, if at all, it had been determined that the height needed to achieve those goals was that of a 185-foot tower, with its base placed at an elevation that was fifty feet higher than the base elevation of the plaintiffs' homes.

122.    As indicated in their answer within the Article 78 proceeding, in rendering their decision at the "conclusion" of the public hearing upon the variance applications, the defendants based their decision to grant the variances upon evidence that was never made part of the record, and which was never disclosed to the plaintiffs herein,

123.    In doing so, the defendant Zoning Board Members deprived the plaintiffs of any opportunity to refute or address such evidence, in violation of both New York State law, and the plaintiffs' right to petition the government for the redress of grievances. The plaintiffs were deprived of any opportunity to be heard concerning evidence which they had never seen, and which had never been disclosed to them, but upon which the Zoning Board member defendants based their decision.

**F.    The Planning Board Defendants Unlawfully Render Approvals Based Upon Evidence Which Was Not Entered Into the Record, Thereby Preventing the Plaintiffs From Rebutting Same**

124.    Upon information and belief, the Planning Board defendants similarly proceeded to conduct a sham public hearing upon applications for a permit and site plan approval for the tower desired by the Town at the Bull Path site.

125.    Such sham public hearing was purportedly to determine whether or not such approvals would be granted *or could be granted* under the applicable provisions of the Town's Zoning Code. The hearing, however, was presided over by defendant Samuel Kramer, Chairman of the Planning Board, who presided over the hearing upon whether or not to grant the approvals, while failing to disclose that he had already personally signed a settlement agreement, wherein he has stipulated that *AT&T* could build the tower there.

29

126.    Within the context of a Special Proceeding pending in a state Court, defendant Samuel Kramer swore, under penalties of perjury, to the fact that he had personally signed such an agreement, before the public hearing of the Planning Board ever began.

127.    Having failed to disclose this fact, or recuse himself from the subsequent hearing, defendant Kramer then proceeded to preside over the hearing, during which he, and other defendant Planning Board members made statements on the record. These statements clearly reflected that, in rendering their determination, the Planning Board members were considering evidence that was not part of the record, and had never been introduced at the hearing, thereby making it impossible for the plaintiffs to rebut such evidence that they had never seen or heard.

128.    Under defendant Kramer's direction, the Planning Board defendants then unlawfully granted such applications based upon evidence that was never entered into the record, and never made available to the plaintiffs, thereby depriving the plaintiffs of any opportunity to rebut such evidence.

129.    More specifically, the Planning Board Defendants granted such applications based upon evidence concerning purported needs of the Town for emergency service communications coverage, and evidence which purportedly showed that whatever such needs purportedly were, the installation of unspecified equipment *at the Iacono site would not satisfy the Town's undisclosed "needs," whatever those undisclosed needs were purported to be.*

130.    Upon information and belief, the Planning Board defendants denied requests that such information be disclosed and/or made available to the plaintiffs.

131.    In both illegally considering, and rendering their determination upon, evidence that was never entered into the public hearing or the record for same, and deliberately and intentionally depriving the plaintiffs of any opportunity to review and rebut any such evidence, the Planning Board Defendants deprived the plaintiffs of their right to petition the government for the redress of grievances

132.    After each of such sham hearings, the outcomes of which the Town defendants had determined long before such hearings ever commenced, the Zoning Board defendants and Planning Board defendants proceeded to grant all of the applications necessary for the approval and construction of the proposed two hundred twenty-five (225) foot tower directly adjacent to the plaintiffs' homes.

133.    If the proposed tower is built, the plaintiffs will suffer damages equaling or exceeding $1,500,000.00, in that the tower will not only inflict severe adverse aesthetic impacts upon their homes but will reduce the value of their respective homes, by as much as $750,000.00 per home.

## CAUSES OF ACTION

### COUNT I

**Violation of Civil Rights Pursuant to 42 U.S.C. §1983**
**Right to Petition Government for the Redress of Grievances**

134.    The plaintiffs repeat and reiterate the allegations set forth within paragraphs "1" through "133" hereinabove, with the same force and effect as if fully set forth at length herein.

135.    At all times described herein, the plaintiffs were possessed of the right to petition the government for the redress of grievances, as guaranteed them under both the First Amendment to the United States Constitution and Article I, §9 of the New York State Constitution.

136.    At all times described herein, such rights to petition encompassed their right to appear before the Town of East Hampton's Zoning Board of Appeals and Planning Board, at public hearings, and to oppose any zoning applications, the granting of which would, or might potentially, adversely impact the plaintiffs' homes.

137.    That right to oppose such applications encompasses, among other things, the right to speak at any such public hearings, and to offer into the record of such proceedings, evidence and/or expert reports which could satisfy the requirements of 42 U.S.C. §332(c)(7)(B)(iii), by serving as "substantial evidence" within the meaning of the federal Telecommunications Act of 1996, without which such federal law would mandate that the zoning applications described herein be granted.

138.    As described herein, the defendant Town, Zoning Board defendants, and Planning Board defendants knowingly, deliberately and intentionally deprived the plaintiffs of any meaningful opportunity of presenting substantial evidence to oppose the granting of approvals for the proposed cell tower described hereinabove upon the real property situated directly adjacent to the plaintiffs' homes. The installation of which would inflict severe adverse impacts upon the plaintiffs' homes by dramatically reducing the value of the plaintiffs' homes and inflicting severe adverse aesthetic impacts upon the same.

139.    Both the defendant Town, and each and every one of the Zoning Board defendants and Planning Board defendants are "persons" within the meaning of 42 U.S.C. §1983, and each of them acted under color of state law at the time they knowingly and deliberately deprived the plaintiffs of their Constitutional rights.

<u>The Zoning Board Defendants</u>

140.    Upon information and belief, defendants JOHN WHELAN, TIM BRENNEMAN, DENISE SAVARESE, ROY DALENE, JOAN MORGAN McGIVERN, THERESA BERGER, and the Town of East Hampton (by its final-decision-makers), conspired to violate, and deliberately violated the plaintiffs' rights, as described herein.

141.    At all relevant times described herein, defendants JOHN WHELAN, TIM BRENNEMAN, DENISE SAVARESE, ROY DALENE, JOAN MORGAN McGIVERN, THERESA BERGER were the members of the Town of East Hampton Zoning Board of Appeals (hereinafter "the ZBA"), and were, and are, the final decision-makers of the Town with respect to (a) determining how hearings before the ZBA are conducted, (b) what evidence is to be permitted, (c) what evidence is to be considered, and (d) what the final determinations will be.

142.    As members of the ZBA, defendants JOHN WHELAN, TIM BRENNEMAN, DENISE SAVARESE, ROY DALENE, JOAN MORGAN McGIVERN, THERESA BERGER conduct and preside over public hearings upon applications for variances under the Town Zoning Code. They presided over a public hearing concerning *AT&T*'s application for variances, to enable *AT&T* to install a cell tower upon the site desired by the Town (the Bull Path site).

143.    Upon information and belief, before such public hearing was conducted defendants JOHN WHELAN, TIM BRENNEMAN, DENISE SAVARESE, ROY DALENE, JOAN MORGAN McGIVERN, THERESA BERGER were made aware of the settlement between the Town and *AT&T,* and of the Town of East Hampton's desire to induce *AT&T* to build the new tower upon the Bull Path site adjacent to the plaintiffs' homes.

144.    Upon information and belief, defendants JOHN WHELAN, TIM BRENNEMAN, DENISE SAVARESE, ROY DALENE, JOAN MORGAN McGIVERN, THERESA BERGER conspired with other representatives of the Town of East Hampton to grant such variances, long before any public hearing upon the variances was to take place.

145.    Upon information and belief, before such public hearing was conducted, defendants JOHN WHELAN, TIM BRENNEMAN, DENISE SAVARESE, ROY DALENE, JOAN MORGAN McGIVERN, THERESA BERGER conspired to prevent the plaintiffs or anyone else who would be opposed to the granting of such variances, from submitting into the record of such proceeding, substantial evidence which was legally necessary to serve as a basis for denying such applications.

146.    Upon information and belief, before such public hearing was conducted, defendants JOHN WHELAN, TIM BRENNEMAN, DENISE SAVARESE, ROY DALENE, JOAN MORGAN McGIVERN, THERESA BERGER affirmatively knew that, under New York State law, the legal test in determining whether one or more variances could lawfully be granted to "the applicant" *(AT&T)*, required them to consider whether the applicant would suffer "a hardship" if the variance application were to be denied.

147.    Upon information and belief, before such public hearing was conducted, defendants JOHN WHELAN, TIM BRENNEMAN, DENISE SAVARESE, ROY DALENE, JOAN MORGAN McGIVERN, THERESA BERGER affirmatively knew that *AT&T* would not suffer **any** hardship if the variance application were to be denied. On the contrary, any hardship to *AT&T* would be *eliminated in its entirety if the variance application were denied*.

148.    This is because, upon information and belief, each of such defendants knew that under the terms of the settlement agreement executed by the Town and *AT& T*, if the defendants denied the application for variances, *AT&T* had the right to simply install its antennas on the *Iacono Farm* tower, as a matter of right. No further zoning approvals would be needed, and putting its antennas on the *Iacono Farm* tower is precisely what *AT&T* wanted to do, as its representatives affirmatively indicated, on the record, to each of such defendants <u>at the public hearing concerning the variance application</u>. The plaintiffs have seen the settlement agreement and incorporate the same by reference herein.

149.    Under the circumstances, upon information and belief, before such public hearing was conducted, defendants JOHN WHELAN, TIM BRENNEMAN, DENISE SAVARESE, ROY DALENE, JOAN MORGAN McGIVERN, THERESA BERGER conspired to prevent the plaintiffs or anyone else who would be opposed to the granting of such variances, from discussing the fact that if the Town simply allowed *AT&T* to install its antenna where it actually wants to install them, at the *Iacono Farm*, there would be no hardship to *AT&T,* whatsoever.

150.    In accord with such conspiracy, each of such defendants refused to let the plaintiffs, or their attorney, discuss these facts, the issue of hardship, or the fact that *AT&T* does not want to obtain the variances being requested, but instead, wants to put its antennas on the existing tower at the *Iacono Farm*, on the record at the hearing.

151.    Upon information and belief, before such public hearing was conducted, or even opened, defendants JOHN WHELAN, TIM BRENNEMAN, DENISE SAVARESE, ROY DALENE, JOAN MORGAN McGIVERN, THERESA BERGER conspired that they would close both the public hearing, and the record, after the very first hearing, and after limiting anyone who wanted to oppose the granting of the variances no more than 3 minutes to try to oppose the application.

152.    Upon information and belief, as described herein, each of these defendants conducted a "sham" hearing, at which these defendants had predetermined the outcome before the hearing was ever opened and before anyone opposed to the approval of the application had uttered a single word.

153.    Upon information and belief, each of these defendants engaged in all of the above-referenced conduct, with the intent to prevent the plaintiffs and their attorney from (a) creating a record that could be used to challenge their granting of the variances at issue successfully, and (b) preventing the plaintiffs and their attorney from collecting, obtaining and submitting "substantial evidence" which could legally serve as a basis for denying the variance application, while not violating federal law, and more specifically, the TCA.

154.    After all of the foregoing, said defendants proceeded to grant the variances, which authorized *AT&T* to construct the tower described herein.

### The Planning Board Defendants

155.    Upon information and belief, defendants SAMUEL KRAMER, SHARON McCOBB, IAN CALDER-PIEDMONTE, ED KRUG, and the Town of East Hampton (by its final-decision-makers), conspired to violate the plaintiffs' rights, as described herein.

156.    At all relevant times described herein, defendants SAMUEL KRAMER, SHARON McCOBB, IAN CALDER-PIEDMONTE, and ED KRUG were the members of the Town of East Hampton Planning Board.

157.    At all relevant times described herein, defendants SAMUEL KRAMER, SHARON McCOBB, IAN CALDER-PIEDMONTE, and ED KRUG were, and are, the final decision-makers of the Town, with respect to (a) determining how hearings before the Planning Board are conducted, (b) what evidence is to be permitted, (c) what evidence is to be considered, and (d) what the final determinations will be.

158.    As members of the Planning Board, defendants SAMUEL KRAMER, SHARON McCOBB, IAN CALDER-PIEDMONTE, and ED KRUG conduct and preside over public hearings upon applications for permits and site plan approvals under the Town Zoning Code. They presided over a public hearing upon *AT&T*'s application for such approvals, to enable *AT&T* to install a cell tower upon the site desired by the Town (the Bull Path site).

159.    Upon information and belief, before such public hearing was conducted, and/or outside of the scope of the actual public hearing, defendants SAMUEL KRAMER, SHARON McCOBB, IAN CALDER-PIEDMONTE, and ED KRUG were made aware of the settlement between the Town and *AT&T*, and of the Town of East Hampton's desire to induce *AT&T* to build the new tower upon the Bull Path site adjacent to the plaintiffs' homes.

160.    Upon information and belief, defendants SAMUEL KRAMER, SHARON McCOBB, IAN CALDER-PIEDMONTE, and ED KRUG conspired with other representatives of the Town of East Hampton to grant any and all approvals which came before them, long before any public hearing upon such applications were to take place.

161.    Upon information and belief, both before such public hearing was conducted, during the hearing, and after the hearing, defendants SAMUEL KRAMER, SHARON McCOBB, IAN CALDER-PIEDMONTE, and ED KRUG conspired to consider evidence that was never made part of the record of such hearing. In so doing, they prevented the plaintiffs or anyone else who would be opposed to the granting of such approvals, from submitting evidence which could have refuted the evidence which such defendants considered but refused to make available to the plaintiffs.

162.    Upon information and belief, as described herein, each of these defendants conducted a "sham" hearing, at which the outcome of the had been predetermined before the hearing was ever opened and before anyone opposed to the approval of the applications at issue, had uttered a single word.

163.    Upon information and belief, each of these defendants engaged in all of the above-referenced conduct, with the intent to prevent the plaintiffs and their attorney from (a) creating a record that could be used to challenge their granting of the approvals at issue successfully, and (b) preventing the plaintiffs and their attorney from seeing, hearing, or even learning of the evidence that was not made part of the record, and thereby depriving the plaintiffs' attorney of any opportunity, whatsoever, to contest same.

164.    After all of the foregoing, said defendants proceeded to grant the approvals, which authorized *AT&T* to construct the tower described herein.

165.    In doing so, the Town, the Zoning Board defendants, and the Planning Board defendants, knowingly and deliberately deprived the plaintiffs of their right to petition the government for the redress of grievances, as guaranteed to the plaintiffs under the First Amendment to the United States Constitution.

166.    As caused by these defendants, the construction of such a tower directly adjacent to the plaintiffs' homes will inflict financial damages upon the plaintiffs, which will equal or exceed not less than one million five hundred thousand dollars due to actual loss in their property values.

167.    Contemporaneously, the construction of what would stand as a twenty-three story tower, directly adjacent to the plaintiffs' two-story home, will inflict a severe and irreparable adverse aesthetic impact upon the plaintiffs' homes for which no amount of financial damages could sufficiently compensate them.

168.    Given the foregoing, the plaintiffs are entitled to seek redress and to obtain a declaratory judgment, injunctive relief, and a money judgment against each of these defendants, jointly and severally, under 42 U.S.C. §1983, and to obtain an additional award for reasonable attorneys fees and costs under 42 U.S.C. §1988.

## COUNT II
### Violation of Civil Rights Pursuant to 42 U.S.C. §1983
### Procedural Due Process

169.    The plaintiffs repeat and reiterate the allegations set forth within paragraphs "1" through "168" hereinabove, with the same force and effect as if fully set forth at length herein.

170.    Under New York Law, when a person acquires title to real property which is restricted by a local zoning ordinance, the property rights obtained by such person encompass, among other things, the right to both "rely upon the promise of the ordinance itself provides" and the right to demand that the municipality enforce such ordinance to protect against the diminution of the value of their real property.

171.    Alternatively stated, such property rights include the right to have a local zoning code, by which a plaintiff's real property is restricted, to have that same zoning code enforced against all others, including the municipality, to the extent necessary to protect the value of the plaintiff's real property.

172.    Such property rights vests aggrieved property owners with the right to seek enforcement of zoning provisions, which were intended to protect properties, inclusive of the plaintiffs herein. This includes the right to seek judicial relief to vindicate the plaintiffs' discrete, separate identifiable interest of their property, and to secure enforcement of the applicable zoning ordinance to protect the value of their real property.

173.    Such right encompasses the right to obtain injunctive relief of the same, and such right exists, *in addition to*, *and independent of*, any right to pursue an Article 78 proceeding for review of any administrative determination.

174.    At the time the plaintiffs purchased their real properties situated within the Town of East Hampton, the Town maintained and still maintains the Town of East Hampton Zoning Code, including but not limited to Chapter 255 thereof. This Code places restrictions upon the uses of all real properties within the Town, inclusive of both the plaintiffs' real properties and the Bull Path property adjacent to their home.

41

175.    At the time the plaintiffs purchased their properties, Chapter 255 of the East Hampton Zoning Code contained, and still contains the codified legislative intent for which such restrictions were placed, and which remain in place against both the plaintiffs' properties and the Bull Path site.

176.    As is explicitly stated within Section §255-1-11 of the Code, the legislative intent for which the Town imposed the restrictions contained within Chapter 255 of the Zoning Code were, and are: "to protect the established character of residential neighborhoods, especially residential neighborhoods, the social and economic well being of residents and the value of private and public property" (Section §255-1-11(B)), "to enhance the value of land generally throughout the Town," (Section §255-1-11(J)) and to protect the "aesthetic attributes" of the Town (Section §255-1-11(L)).

177.    With respect to the construction of cell towers, such as the massive cell tower which the Town is trying to force *AT&T* to build adjacent to the plaintiffs' two-story homes, the Town's Zoning Code places both restrictions and permit requirements upon same, for the explicitly stated purposes of controlling the siting of such towers "in a way that minimizes the adverse aesthetic impact" (Section §255-1-11(M)(4)) and "promotes [cell towers] compatibility with surrounding land uses, and protects the attractiveness, health, safety, general welfare and property values of the community (Section §255-1-11(M)(6))

178.    In furtherance of those explicitly codified purposes, the Town enacted a Special Permit requirement for cell towers, and explicitly provides that:

"No special permit shall be granted unless the issuing board shall specifically find and determine that:

    A.    Nature of Use. The use proposed will be in harmony with, and promote the general purposes of this chapter (as described within paragraphs 261-262 hereinabove) and . . .

    D.    Compatibility. The site of the proposed use is a suitable one for the location of such use in the Town, and, if sited at that location, the proposed use will be compatible with its surroundings and with the character of the neighborhood and of the community in general, particularly with regard to visibility, scale and overall appearance."

179.    As real property owners who acquired real property, which is subject to the zoning restrictions set forth within Chapter 255 of the Town Zoning Code, the plaintiffs are vested with a property right in the enforcement of the provisions of such chapter of the zoning code, to the extent enforcement is necessary to protect and preserve the value of their real properties.

180.    As described hereinabove, the defendant Town, Zoning Board defendants, and Planning Board defendants deliberately refused to enforce such zoning restrictions, including those of permit, variance and site plan requirements, to achieve some undisclosed "goals" on the part of the Town. The defendants deprived the plaintiffs of fair hearings before the Zoning Board of Appeals and Planning Board to seek to have such zoning restrictions applied correctly in a manner that would have protected the value of the plaintiffs' real property.

181.    In doing so, said defendants deprived the plaintiffs of property rights established under New York law, without due process of law, in violation of the plaintiffs' rights under the 14th Amendment to the United States Constitution.

182.    As caused by these defendants, the construction of such a tower directly adjacent to the plaintiffs' homes will inflict financial damages upon the plaintiffs, which will equal or exceed not less than one million five hundred thousand dollars due to actual loss in their property values.

183.    Contemporaneously, the construction of what would stand as a twenty-three story tower, directly adjacent to the plaintiffs' two-story homes, will inflict a severe and irreparable adverse aesthetic impact upon the plaintiffs' homes for which no amount of compensatory damages awarded could sufficiently make up for the damages incurred.

184.    Given the foregoing, the plaintiffs are entitled to seek redress and to obtain a declaratory judgment, injunctive relief, and a money judgment against each of these defendants, jointly and severally, under 42 U.S.C. §1983, and to obtain an additional award for reasonable attorneys fees and costs under 42 U.S.C. §1988.

## COUNT III
### New York State Law Claim
**Article I, Sections 6 and 9 of The New York State Constitution
Right to Petition – Deprivation of Property Interest**

185.    The plaintiffs repeat and reiterate the allegations set forth within paragraphs "1" through "184" hereinabove, with the same force and effect as if fully set forth at length herein.

186.    At all times described herein, the plaintiffs were possessed of a right to petition the government for the redress of grievances under Article I, Section 9 of the New York State Constitution.

187.    Such right to petition encompassed the right to be afforded a meaningful opportunity to oppose the zoning applications that are described herein, to review all of the Town's records pertaining to such application, and to be afforded a meaningful opportunity to obtain, prepare and submit "substantial evidence" sufficient to create a record based upon which such applications could have been denied without violating the constraints of 47 U.S.C. §332(c)(7)(B)(iii) of the Telecommunications Act of 1996.

188.    As described hereinabove, the Town defendants, Zoning Board defendants, and Planning Board defendants deliberately violated the plaintiffs' right to petition by depriving the plaintiffs of any meaningful opportunity to obtain and review the Town records, and to obtain, and proffer into the record, substantial evidence sufficient to provide a basis upon which the applications described herein could lawfully have been denied.

189.    As further described herein, such defendants contemporaneously violated the plaintiffs' right to petition by rendering zoning decisions based upon evidence that was never made part of the record and never disclosed to the plaintiffs. Upon information and belief, the defendants intentionally abstained from disclosing such information at the public hearing to ensure that the plaintiffs would have no opportunity to refute such nondisclosed evidence, upon which the defendants rendered their respective zoning determinations.

190.    As described hereinabove, The Town, Zoning Board, and Planning Board also deprived the plaintiffs of property rights that the plaintiffs possess under New York State Law, those being the plaintiffs' rights to have the Town's local zoning laws, which restrict the plaintiffs' ability to use and make improvements upon their real property, applied consistently to the Bull Path site to protect the value of the plaintiffs' homes.

191.    By refusing to apply the Town's zoning laws in an equal manner, and thereby causing the plaintiffs to sustain severe losses to the value of their real properties, the Town, Zoning Board, and Planning Board defendants, deprived the plaintiffs of valuable property rights, without due process, in violation of Article I, Section 6, of the New York State Constitution.

192.    As caused by these defendants, the construction of such a tower directly adjacent to the plaintiffs' homes will inflict financial damages upon the plaintiffs that will equal or exceed not less than one million five hundred thousand dollars due to actual loss in their property values.

193.    Contemporaneously, the construction of what would stand as a twenty-three story tower, directly adjacent to the plaintiffs' two-story home, will inflict a severe and irreparable adverse aesthetic impact upon the plaintiffs' homes for which no amount of financial damages could sufficiently compensate them.

194.    Given the foregoing, the plaintiffs are entitled to seek redress and to obtain a declaratory judgment, injunctive relief, and a money judgment against each of these defendants, jointly and severally.

## PRAYERS FOR RELIEF

**WHEREFORE,** the plaintiffs pray for relief and request that the Court renders judgment

as follows:                                        COUNT ONE

### 42 U.S.C. §1983
### <u>Right to Petition Government for the Redress of Grievances</u>

(a)     A declaratory judgment and order, adjudging and declaring as null and void

*ab initio*, both: (i) the decisions wherein the Town, Zoning Board and Planning Board defendants,

granted defendant AT&T variances, permits and/or a site plan approval for the Bull Path site

described herein, and any proposed tower to be constructed upon same and (ii) any permits and/or

approvals which have been issued by any of the defendants pertaining to same,

(b)     injunctive relief, including but not limited to, a permanent injunction, enjoining any

and all of the defendants herein from constructing and/or permitting the construction of, or granting

any approvals for, any tower or wireless facility upon the Bull Path site described herein,

(c)     Awarding the plaintiffs compensatory damages and a monetary judgment against

the defendants THE TOWN OF EAST HAMPTON, JOHN WHELAN individually, TIM

BRENNEMAN individually, DENISE SAVARESE individually, ROY DALENE individually,

JOAN MORGAN McGIVERN individually, THERESA BERGER individually, SAMUEL

KRAMER individually, SHARON McCOBB individually, IAN CALDER-PIEDMONTE

individually, and ED KRUG individually, jointly and severally, in the amount of $1,500,000.00,

or such other amounts proven at the trial of this action, together with pre-judgment and post-

judgment interest; and

47

(d)    Awarding the plaintiffs punitive damages against defendants JOHN WHELAN

individually, TIM BRENNEMAN individually, DENISE SAVARESE individually, ROY

DALENE individually, JOAN MORGAN McGIVERN individually, THERESA BERGER

individually, SAMUEL KRAMER individually, SHARON McCOBB individually, IAN

CALDER-PIEDMONTE individually, and ED KRUG individually, and a monetary judgment

against such defendants, jointly and severally, in such amounts determined by the trier of fact at

the trial of this action; and

(e)    Awarding the plaintiffs reasonable attorneys fees and costs pursuant to 42 U.S.C.

§1988(b); and

(f)    Awarding the plaintiffs reimbursement for any and all expert fees incurred by the

plaintiffs, pursuant to 42 U.S.C. §1988(c); and

(g)    Awarding the plaintiffs such other and further relief as this court may deem just

and proper.

## COUNT TWO

## 42 U.S.C. §1983

## Due Process

(a)    A declaratory judgment and order, adjudging and declaring as null and void

*ab initio*, both: (i) the decisions wherein the Town, Zoning Board and Planning Board defendants,

granted defendant AT&T variances, permits and/or a site plan approval for the Bull Path site

described herein, and any proposed tower to be constructed upon same and (ii) any permits and/or

approvals which have been issued by any of the defendants pertaining to same,

(b)      injunctive relief, including but not limited to, a permanent injunction, enjoining any and all of the defendants herein from constructing and/or permitting the construction of, or granting any approvals for, any tower or wireless facility upon the Bull Path site described herein,

(c)      Awarding the plaintiffs compensatory damages and a monetary judgment against the defendants THE TOWN OF EAST HAMPTON, JOHN WHELAN individually, TIM BRENNEMAN individually, DENISE SAVARESE individually, ROY DALENE individually, JOAN MORGAN McGIVERN individually, THERESA BERGER individually, SAMUEL KRAMER individually, SHARON McCOBB individually, IAN CALDER-PIEDMONTE individually and ED KRUG individually, jointly and severally, in the amount of $1,500,000.00, or such other amounts proven at the trial of this action, together with pre-judgment and post-judgment interest; and

(d)      Awarding the plaintiffs punitive damages against defendants JOHN WHELAN individually, TIM BRENNEMAN individually, DENISE SAVARESE individually, ROY DALENE individually, JOAN MORGAN McGIVERN individually, THERESA BERGER individually, SAMUEL KRAMER individually, SHARON McCOBB individually, IAN CALDER-PIEDMONTE individually and ED KRUG individually, and a monetary judgment against such defendants, jointly and severally, in such amounts determined by the trier of fact at the trial of this action; and

(e)      Awarding the plaintiffs reasonable attorneys fees and costs pursuant to 42 U.S.C. §1988(b); and

(f)      Awarding the plaintiffs reimbursement for any and all expert fees incurred by the plaintiffs, pursuant to 42 U.S.C. §1988(c); and

(g)    Awarding the plaintiffs such other and further relief as this court may deem just and proper.

## COUNT III

### New York State Law Claim

### Article I, Sections 6 and 9 of The New York State Constitution

(a)    A declaratory judgment and order, adjudging and declaring as null and void *ab initio*, both: (i) the decisions wherein the Town, Zoning Board and Planning Board defendants, granted defendant AT&T variances, permits and/or a site plan approval for the Bull Path site described herein, and any proposed tower to be constructed upon same and (ii) any permits and/or approvals which have been issued by any of the defendants pertaining to same,

(b)    injunctive relief, including but not limited to, a permanent injunction, enjoining any and all of the defendants herein from constructing and/or permitting the construction of, or granting any approvals for, any tower or wireless facility upon the Bull Path site described herein,

(c)    Awarding the plaintiffs compensatory damages and a monetary judgment against the defendants THE TOWN OF EAST HAMPTON, JOHN WHELAN individually, TIM BRENNEMAN individually, DENISE SAVARESE individually, ROY DALENE individually, JOAN MORGAN McGIVERN individually, THERESA BERGER individually, SAMUEL KRAMER individually, SHARON McCOBB individually, IAN CALDER-PIEDMONTE, individually, and ED KRUG individually, jointly and severally, in the amount of $1,500,000.00, or such other amounts proven at the trial of this action, together with pre-judgment and post-judgment interest; and

(d)     Awarding the plaintiffs punitive damages against defendants JOHN WHELAN individually, TIM BRENNEMAN individually, DENISE SAVARESE individually, ROY DALENE individually, JOAN MORGAN McGIVERN individually, THERESA BERGER individually, SAMUEL KRAMER individually, SHARON McCOBB individually, IAN CALDER-PIEDMONTE individually, and ED KRUG individually, and a monetary judgment against such defendants, jointly and severally, in such amounts determined by the trier of fact at the trial of this action; and

(e)     Awarding the plaintiffs reasonable attorneys fees and costs and such other and further relief as this court may deem just and proper.


Dated: Merrick, New York
       June 26, 2020


                Yours etc.,

                Campanelli & Associates, P.C.


                By: _____/S_____
                        Andrew J. Campanelli
                        *Attorneys for Plaintiffs*
                        1757 Merrick Avenue, Suite 204
                        Merrick, New York 11566
                        (516) 746-1600